THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PREVIN SANFORD, Defendant-Appellant.

Fifth District    No. 80-361

Opinion filed August 25, 1981.

John H. Reid and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Clemons, State's Attorney, of Murphysboro (Gillum Ferguson and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Previn Sanford, appeals his convictions for burglary and theft entered after a bench trial in the circuit court of Jackson County. Defendant contends that the presence of his fingerprints on a highly mobile box found at the scene of the crime, the only evidence that linked him with the crime, was insufficient to establish his guilt beyond a reasonable doubt.

At trial it was undisputed that the Carbondale residence of Buford Lewis, Sr., had been burglarized on October 25, 1979, between 8:30 a.m. and 10 a.m. Buford Lewis, Sr. (Lewis, Sr.), testified that $500 was stolen from his safe along with some jewelry. Lewis, Sr., stated that he was not aware that anything of value had been either contained in or stolen from a metal box located in his closet. However, an investigating officer testified that Buford Lewis, Jr. (Lewis, Jr.), had reported that $600 was also missing from that metal box. Lewis, Sr., testified that the box had been given to him by his son, but he did not state how long the box had been in his closet. None of the stolen items was recovered, and Lewis, Jr., did not testify. The only evidence connecting defendant to the burglary and theft was that two of his fingerprints were found on the metal box.

At trial defendant testified that he was visiting friends in Carbondale during late October 1979 so he could participate in Halloween festivities. However, defendant denied any involvement in the burglary, stating that he was in his hotel room sleeping at the time of the burglary. Although defendant could not remember what day of the week October 25, 1979, fell on, he stated that he was certain that he had slept late that day because he had checked into his hotel room late the night before. Defendant also stated that he had checked into the hotel as soon as he had arrived in Carbondale. Yet, when asked to explain how his fingerprints had gotten

on the metal box, defendant stated that he had touched the box when Lewis, Jr., sold him some marijuana that had been stored in that box. According to defendant, this sale occurred during his second day in Carbondale, which was approximately two days prior to the burglary. This explanation would place defendant in Carbondale several days before the burglary, and it was completely at odds with defendant's other testimony. Defendant's statement that he checked into the hotel immediately upon arriving in Carbondale the night before the burglary was inconsistent with his explanation of how his fingerprints got on the box several days earlier.

Defendant's explanation was also inconsistent with his prior statement to police in which he denied ever having met Lewis, Jr. In addition to being inconsistent, defendant's explanation at trial could easily have been viewed with skepticism by the trial judge. Defendant testified that he had seen neither Lewis, Jr., nor the metal box prior to the night-time drug sale. Defendant stated that he had had only a "glance" at both Lewis, Jr., and the box. Yet at trial he was able to identify each positively, even though there was nothing distinctive about the metal box. The trial judge stated that he could not believe that Lewis, Jr., would sell drugs to a total stranger, as defendant had claimed. The trial court also stated that it was convinced that defendant's explanation was a fabrication derived from the allegedly well-known drug-dealing habits of Lewis, Jr.

Defendant's conviction was based solely on the presence of his fingerprints on the metal box. It is undisputed that a positive fingerprint identification may be sufficient circumstantial evidence to sustain a conviction. However, defendant cites cases which have stated that in order to sustain a conviction it must first be established that the fingerprints could have been impressed only during the commission of the crime. (*People v. Ware* (1980), 82 Ill. App. 3d 297, 402 N.E.2d 762; *People v. Donahue* (1977), 50 Ill. App. 3d 392, 365 N.E.2d 710.) In both *Ware* and *Donahue* murder convictions were reversed because the appellate courts concluded that a reasonable doubt remained as to whether the fingerprints could have been placed at the scenes prior to the times of the murders for which the defendants were being prosecuted. *Donahue* is distinguishable in that there, even though defendant's fingerprints were found on the murder weapon—an iron, it was undisputed that defendant had been at the scene visiting with the victim a week before the murder. *Ware* is not as readily distinguishable from the case at bar. In *Ware* defendant denied ever having met the two murder victims and also denied ever having been in the apartment where they were murdered. Despite the denials, defendant's fingerprints were found on both movable and immovable objects located within the apartment. Furthermore, it was undisputed that several of the objects had not been present in the apartment only hours

before the murders. The appellate court reversed defendant's conviction, ruling that the State had not proved beyond a reasonable doubt that defendant's obvious presence in the apartment had not occurred prior to the murders. The appellate court further reasoned that defendant's assertions that he had never been in the apartment were understandable in view of the fact that he would not want to be implicated in murders for which his roommate had already pleaded guilty.

*Ware* suggests that the State must prove a negative, namely that defendant could never have been at the scene of the offense other than at the time of the crime. If that is so, neither the conviction in this case, nor virtually any other conviction based solely upon fingerprint evidence, could be affirmed.

In response to the seeming confusion created by such precedents, the supreme court recently considered the law in this area. *People v. Rhodes* (1981), 85 Ill. 2d 241, 422 N.E.2d 605, was a consolidated case involving three defendants. Two of the defendants were convicted solely on the basis of fingerprints found at the scenes of burglaries. The third defendant had his probation revoked for the same reason. The supreme court affirmed both the convictions and the probation revocation, holding that the circumstances under which the fingerprints were found could lead to only one conclusion. The court in *Rhodes* cited with approval the statement that "[t]he circumstances under which defendant's fingerprints were found lead inescapably to the conclusion that they could have been impressed only at the time the crime was committed, and this is sufficient to support a conviction." (*State v. Dorsett* (1973), 18 N.C. App. 318, 319, 196 S.E.2d 591, 592.) The court in *Rhodes* recognized that the State always has the burden of persuading the trier of the fact that a defendant is guilty beyond a reasonable doubt. However, the court also implicitly recognized that the defendant may have the burden of producing evidence as to how his fingerprints could have been at the scene of the crime without criminal involvement.

In the case at bar defendant did produce such evidence. However, his explanation contained inconsistencies and was otherwise so improbable that the trier of fact could still have been convinced beyond a reasonable doubt that the fingerprints were placed on the box at the time of the burglary. Since we find that conclusion inescapable, we must affirm.

Affirmed.

KASSERMAN, P. J., and KARNS, J., concur.