THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHABASCO ELSTON, Defendant-Appellant.

Third District No. 3—90—0546

Opinion filed December 24, 1991.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Chabasco Elston, was convicted of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3) and sentenced to six years' imprisonment. He appeals. We affirm.

The record reveals that on or about August 16, 1988, someone broke into the residence of Janelle Carter while he and his wife were out of town on vacation. The break-in was discovered on August 16, 1988, by Carter's neighbor, Warren Wallace. Wallace found the sliding glass door to the back of Carter's town house open. Upon entering and observing broken glass, he called the police.

The police arrived at the crime scene and investigated the break-in. They obtained one latent fingerprint from a piece of glass that had fallen out of a broken basement window at the rear of the residence. Another fingerprint was obtained from the bottom of a handle on a dresser drawer in the master bedroom.

On August 18, 1988, the Carters returned home and discovered someone had taken two VCRs and a microwave oven from their town house. According to Mr. Carter, only he, his wife, and his stepdaughter, Nedra Williams, had keys to his home. Nedra had recently moved to Chicago, so that only he and his wife were living in the home at the time of the burglary.

After examining his town house, Mr. Carter told the police that a clock radio in the master bedroom had been moved from the headboard onto the bed. The police dusted the clock radio for fingerprints and discovered a third fingerprint on its backside.

Will County sheriff's deputy Robert Coleman booked the defendant on November 21, 1988. At that time, he overheard the defendant talking on a pay telephone in the booking cell where he was being held. Coleman heard the defendant say he and Tyrone had gone into a place while Chuck waited out in the van. Coleman also heard the defendant say, "[W]e carried the stuff out, got in the van and we all took off."

Susan Rutter, a forensic scientist with the State Police lab, testified that her specialized duties were in latent fingerprint examination. She stated the fingerprint on the clock radio belonged to the defendant.

The defendant denied burglarizing the Carters' town house. According to the defendant, on a Saturday in August of 1988, he and someone named Nate went to visit one of Nate's relatives who lived in a town house on Green Briar. (The Carters' town house was also located on Green Briar.) The defendant and Nate went to the door of a town house and were let in by Nate's cousin, Sandra. They went into the kitchen, where they talked and listened to music with Sandra and a woman named Karen. There was a clock radio on the kitchen table, which the defendant turned around to see the time. After about one-half hour, Nate and the defendant left, with each of them going off in a separate direction.

The defendant admitted he made two telephone calls from the Will County jail after he was arrested. He admitted calling his mother and his girlfriend, but denied discussing the charges he was facing. He also denied knowing anyone named Tyrone Lewis or Charles Wilson. (We note these men apparently were also charged with the burglary.)

The defendant admitted he had previously been convicted of robbery. He also admitted he told the police he was working at The Signature Group when the burglary occurred. At trial, he acknowledged, however, that he did not start working there until after the burglary had occurred.

Sharon Purifoye testified she was a friend of Nedra Williams and that she visited Nedra at the Carter residence one afternoon during the week of August 16, 1988. She also admitted she had a cousin named Nate with whom she lived. However, we note both Williams and Purifoye testified that neither Nate nor the defendant visited them at the Carters' town house on that day.

The trial judge found the defendant guilty and sentenced him to six years' imprisonment.

On appeal, the defendant argues the presence of his fingerprint was not sufficient to support a conviction, because the State failed to rule out the possibility that the print could have been impressed at a time other than when the burglary occurred. We disagree.

The defendant claims to have made the print on the clock radio when he went to a residence on Green Briar to meet with Nate's cousin. He also claims that Deputy Coleman was mistaken as to the

conversation he overheard the defendant having on the telephone at the jail.

When faced with conflicting testimony, it is the province of the trier of fact to determine the credibility of the witnesses. (*People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53.) The trial court is free to reject a defendant's improbable explanation of how his fingerprints could have been at the scene of the crime without criminal involvement. See *People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806; *People v. Sanford* (1981), 99 Ill. App. 3d 821, 426 N.E.2d 273.

Here, both Purifoye and Williams denied that any meeting at the town house ever took place. Further, Deputy Coleman was clear and unequivocal in his testimony. Conversely, the defendant's testimony was vague, inconsistent, and he had a history of dishonesty. Under these circumstances, the trial court could reasonably conclude that the defendant's testimony was not credible. We find, additionally, that given the circumstantial evidence presented implicating the defendant in the burglary, the trial court could have rationally found the defendant was proved guilty beyond a reasonable doubt of residential burglary. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

GORMAN and SLATER, JJ., concur.