No. 2--05--0306
filed 05/17/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--174 |
| CINDI WHITING, | ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

This appeal results from defendant Cindi Whiting's conviction on an aggravated battery indictment. The trial court denied defendant's posttrial motion for a new trial. Defendant has raised the issue of ineffective assistance of trial counsel, arguing her trial counsel overbore her decision to testify on her own behalf at trial. Accordingly, defendant claims she was deprived of her constitutional right to testify on her own behalf. Defendant asserts she did not knowingly and voluntarily waive her right to testify, and there is nothing in the record indicating the trial court either admonished defendant about her right to testify or inquired of her if she knowingly and voluntarily waived her right to testify on her own behalf regardless of any advice given to her by her counsel.

For the reasons stated below, we determine that defendant did not receive the effective assistance of counsel, and we determine defendant was prejudiced, because the error was not harmless beyond a reasonable doubt. We reverse the trial court's denial of defendant's motion for a new trial, vacate the judgment of conviction, and remand the case to the trial court for a new trial.

Defendant's indictment was a by-product of an incident that involved defendant's son and local police a day or two before Department of Children and Family Services (DCFS) employee Mary Anne Zimmer arrived at defendant's home on the late morning of February 22, 2004. Defendant's husband answered the door and allowed Ms. Zimmer entrance into the house, after Ms. Zimmer identified herself as an investigator for DCFS. Ms. Zimmer removed her boots and proceeded up the stairway of the house to look for defendant's 16-year-old son. Ms. Zimmer also asked to see defendant's younger daughter.

The testimony of the prosecution and defense witnesses differed considerably at trial. The State's primary witness, Ms. Zimmer, indicated that she entered defendant's son's room and that defendant was agitated and told her son not to speak with Ms. Zimmer. Ms. Zimmer testified that defendant pushed her out of the bedroom and told her to get out of the house. Ms. Zimmer further stated that defendant followed Ms. Zimmer down the staircase, while pushing Ms. Zimmer. Ms. Zimmer testified that, as she was putting on her boots, defendant was verbally and physically aggressive toward her and grabbed her face and her elbow to push her out the door.

Two witnesses were called to testify on behalf of defendant. Defendant's husband, who was present throughout the entire encounter between defendant and Ms. Zimmer, contradicted the testimony of Ms. Zimmer by testifying that it was Ms. Zimmer who initially

raised her voice and that Ms. Zimmer started jabbing her finger at defendant while all the parties were in the son's bedroom.

Defendant's husband also stated he and defendant had asked Ms. Zimmer as many as 12 times to leave the residence. Defendant's husband testified that defendant never pushed Ms. Zimmer while in the bedroom. Defendant's husband said that Ms. Zimmer threatened defendant that defendant was going to be arrested because of her actions. Finally, defendant's husband indicated that Ms. Zimmer continued to shout at defendant while Ms. Zimmer was beginning her exit from the residence and that defendant had not touched Ms. Zimmer at any time.

Defendant's 16-year-old son also testified. His testimony in large measure corroborated the testimony of defendant's husband. In particular, he testified that he promised his mother that he "would plead the fifth." Defendant's son testified that he did not see defendant push or shove Ms. Zimmer while they were in his room. He added that he did not see defendant shove Ms. Zimmer at the entryway to the home, either.

The case was presented to a jury, the jury returned a guilty verdict, and the court entered judgment thereon. Within a month after the trial and prior to sentencing, defendant obtained the services of new counsel, who filed a motion for a new trial and a subsequent amended motion for a new trial. The amended motion for a new trial included the assertion that defendant had expressed to her trial counsel her desire to testify on her own behalf and to tell her own version of the events on the date of the alleged offense. Defendant's amended motion stated that her trial counsel had advised her that she could not testify on her own behalf at trial.

Defendant, according to the amended motion for a new trial, indicated that she was unaware of her constitutional right to present testimony on her own behalf, in light of her counsel's insistence that she could not testify. Defendant accordingly argued in her amended motion that she had not knowingly or voluntarily personally waived her right to testify on her own behalf to rebut the testimony of Ms. Zimmer. Defendant's motion argued that her trial counsel's actions in preventing her from testifying contributed to a deprivation of her right to effective assistance of counsel, as guaranteed by the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV).

On February 22, 2005, the trial court considered defendant's uncontroverted testimony relative to her amended motion for a new trial, which included her claim of ineffective assistance of counsel, particularly as it pertained to her desire to testify on her own behalf at trial. Defendant claimed that she had wanted to testify, that she had practiced her testimony with her counsel before trial, and that she had continued to inform her counsel that she wanted to testify on her own behalf. Despite that, she said, her counsel told her that she could not testify at trial. Defendant further indicated that she did not personally make an objection when her counsel advised the court that the defense had no further witnesses, because it was her understanding that she could not speak directly to the court while being represented by counsel. In effect, defendant understood that she had a right to testify, but only if her counsel would allow her to testify.

The trial court, after considering the uncontroverted evidence and allegedly following People v. Smith, 176 Ill. 2d 217 (1997), found that the decision not to have defendant testify was a strategic decision in which defendant concurred and that defendant had waived her right to testify. See People v. Smith, 176 Ill. 2d 217 (1997) (inter alia, the

right to testify was raised for the first time on appeal and was deemed waived for failure to raise the issue in a postsentencing motion in the trial court). Additionally, the trial court found that, by failing to make a contemporaneous assertion of her right to testify at the time of trial, defendant waived her right to contest a waiver of her right to testify. Accordingly, the trial court found that there was no sixth amendment violation and that defendant's counsel's performance was not deficient and that defendant was not prejudiced by any deficiencies in her counsel's performance. Thus the trial court never considered whether prejudice to defendant's constitutional rights arose, having determined there was no violation of the right to testify.

The trial court denied the amended motion for a new trial and proceeded to sentencing, sentencing defendant to 18 months' probation, with fines, assessments, and counseling and related requirements. Defendant filed a timely notice of appeal, pursuant to Illinois Supreme Court Rule 604(b) (Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(b), eff. February 1, 2005). The standard of review for determining whether an individual's constitutional rights were violated is de novo. People v. Carini, 357 Ill. App. 3d 103, 113 (2005). However, because this is a direct appeal from an evidentiary hearing, we review the findings of fact to determine if they are against the manifest weight of the evidence.

" 'In a bench trial, the trial court must weigh the evidence and make findings of fact. In close cases, where findings of fact depend on the credibility of witnesses, it is particularly true that a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence. Chicago Investment Corp. v. Dolins, 107 Ill. 2d 120, 124 (1985). *** A decision is against the manifest

weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence.' " People v. A Parcel of Property Commonly Known as 1945 North 31st Street, 217 Ill. 2d 481, 507 (2005), quoting Eychaner v. Gross, 202 Ill. 2d 228, 251-52 (2002).

It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors, including most constitutional violations, that were harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 76 L. Ed. 2d 96, 103 S. Ct. 1974 (1983). Our supreme court has set standards for such determinations in People v. Smith, 38 Ill. 2d 13, 15 (1967), in recognizing that if there was constitutional error at trial, a reviewing court must be able to declare that, beyond a reasonable doubt, the error did not contribute to the finding of guilty. See also People v. Merideth, 152 Ill. App. 3d 304 (1987) (the standard of review for whether error affected the defendant's constitutional right to a fair trial is whether the error was harmless beyond a reasonable doubt, which standard determines whether there is a reasonable possibility that any error might have contributed to the accused's conviction).

The critical aspect of the case presently before us is whether defendant was deprived of a constitutional right, particularly whether she knowingly and voluntarily waived the right to testify on her own behalf.

Illinois courts have consistently recognized a criminal defendant's right to testify on his own behalf at trial as being fundamental. The right is so fundamental that the decision to testify or to decline to testify can be made only by the defendant, regardless of counsel's advice to the contrary. People v. Clemons, 277 Ill. App. 3d 911 (1996). However, a defendant who claims on appeal he was precluded from testifying at trial must have

contemporaneously asserted his right to testify by informing counsel at the time of trial. People v. Brown, 54 Ill. 2d 21, 24 (1973).

We distinguish this case from Brown, 54 Ill. 2d at 24, and People v. Thompkins, 161 Ill. 2d 148, 177-78 (1994), because in this case there were repeated uncontroverted statements and references by defendant at the motion hearing regarding her desire to testify on her own behalf, along with her testimony that her trial counsel told her she could not testify, and that she did not believe she, personally as a lay person, could raise the issue with the court at trial. All of defendant's testimony was uncontroverted, with no objection being raised. We disagree with the dissent's argument that defendant's testimony can be rejected because it was "inherently improbable, contrary to the laws of nature, or contains its own impeachment." Slip op. at 12. We cannot find anything in defendant's testimony that could reasonably be characterized as the dissent suggests.

We also disagree that the witnesses called by defendant at trial sufficed as surrogate witnesses, capable of replacing defendant's own testimony by expressing defendant's position, from which the jury could have made any inferences about the merits of defendant's testimony. The dissent's reference to defendant's statements about self-incrimination and its resulting claim that defendant was sophisticated regarding her constitutional rights leads the dissent to then erroneously conclude the trial court could have concluded defendant also was aware of her right to testify at trial. The dissent fails to cite to any authority that would support its conclusion that knowledge of a constitutional right, contrary to uncontroverted evidence herein, constitutes knowledge and waiver of another constitutional right. Also, we note that defendant promptly objected to the waiver of her right to testify, via the motion for new trial.

From what we can discern, this case is unprecedented in that defendant raised this issue prior to sentencing. All the cases referenced herein by the majority and the dissent involved collateral, postconviction proceedings. This defendant acted in a timely fashion, prior to sentencing ("Final judgment in a criminal case is not entered until the imposition of the sentence; the final judgment in a criminal case is the sentence." People v. Warship, 59 Ill. 2d 125, 130 (1974)), in an attempt to exercise her constitutional right to testify on her own behalf. This case has a fact pattern not apparent in virtually any other reported case, including Thompkins and Brown. We believe, contrary to the dissent, that all the facts contained in the record, including the uncontroverted testimony of defendant, clearly establish that there is no evidence to contradict defendant's claim that the failure to testify was not the result of strategy and that she did not knowingly and voluntarily waive her constitutional right to testify. And we believe that this error resulted in prejudice.

The issue of whether the right to testify has been violated is raised by asserting the ineffective assistance of counsel. Strickland v.Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The basis for determining whether trial counsel was ineffective in his performance is set forth in Strickland and recognized by our supreme court in People v. Albanese, 104 Ill. 2d 504 (1984). Strickland sets forth a two-part test for determining whether a defendant's counsel was ineffective, including (1) whether counsel's performance fell below an objective standard of reasonableness and (2) whether the defendant was prejudiced. A defendant must demonstrate that counsel's errors were so serious that counsel was not functioning as guaranteed by the sixth amendment. However, the court need not determine whether counsel was deficient before examining whether the defendant

was sufficiently prejudiced by the alleged deficiencies (Strickland, 466 U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2069).

In dealing with the second part of the Strickland test, the defendant must demonstrate a reasonable probability that, but for the defense counsel's deficient performance, the result of the trial would have been different. In the present case, defendant was the only person who was in a position to fully express her mental state and to directly rebut the testimony of Ms. Zimmer regarding defendant's interaction with Ms. Zimmer in defendant's home. Certainly, the denial of defendant's opportunity to present testimony that only she was capable of presenting cannot be deemed to be harmless beyond a reasonable doubt. This would seem to be particularly true because the two defense witnesses who did testify were seemingly impeached by their relationship with defendant and the State's argument that their testimony was compromised by their desire to keep defendant out of trouble. As noted, defendant testified at the hearing on her amended motion for a new trial that she believed that while she was represented by counsel she could not address the court about her desire to testify. We believe that the evidence in this case was close and that a different result upon retrial is reasonably probable. See People v. Park, 245 Ill. App. 3d 994, 1003 (1993) (where the only evidence of guilt was found in the accusation of the victim, the case was deemed "close"). The dissent incorrectly determines that this is not a close case and employs a non sequitur to rationalize how harmless error could arise. The dissent relates, "In all criminal cases, it is reasonable for the jury, in assessing witness credibility, to conclude that a defendant who elects to testify is doing so out of the desire to keep himself or herself 'out of trouble.' " Slip op. at 19. As such, there is no reason to believe that, if the jury rejected the husband's and son's testimony as being

biased, it would not have treated defendant's testimony in the same manner. The dissent then cites to multiple cases relating to the deference given to juries' findings of fact and weighing of evidence. To suggest that a trier of fact is free to reject a defendant's testimony prior to its presentation disregards the defendant's presumption of innocence. Slip op. at 19. Until a jury is given the opportunity to weigh the testimony of the defendant, any conclusion drawn regarding deference is premature speculation. In cases that involve deprivation of constitutional rights in criminal proceedings, defendants are entitled to a reasonable level of assurance of counsel's effectiveness. People v. Lyles, 217 Ill. 2d 210 (2005). Considering the uncontroverted evidence that defendant had informed her trial counsel she wanted to testify, there was nothing of record to establish that defendant was informed that she was required to raise a contemporaneous objection under the circumstances, and she promptly raised the issue upon acquisition of new counsel prior to sentencing rather than in postconviction proceedings. The trial court's determination that defense counsel's waiver of defendant's right to testify was a matter of trial strategy was against the manifest weight of the evidence.

Because we find the trial court's determination that defense counsel's waiver of defendant's right to testify was a matter of trial strategy was against the manifest weight of the evidence, we determine the trial court erred. Further, because there is no record of defendant's knowing and voluntary waiver of her right to testify, especially in light of defendant's uncontroverted testimony at the hearing on her posttrial motion, her prompt action in hiring new counsel to raise that issue, and the other facts already stated regarding the potential impact of defendant's testimony at trial, we determine that a lack of prejudice is not established beyond a reasonable doubt. The dissent relates the law of other

jurisdictions in an attempt to support its position that no error arose or that any error was not prejudicial. We believe the law in this state is clear and controlling and therefore believe that mention of any jurisdiction other than federal is immaterial.

In our assessment, we have considered the benefits of a trial court's clarification of whether a defendant has knowingly waived this important constitutional right to testify, either by an admonishment by the court on the record, or on-the-record questioning of the defendant regarding the defendant's knowing waiver of that right, against the court's failure to do so. We are cognizant of cases such as People v. Shelton, 252 Ill. App. 3d 193 (1993), which indicate that a trial court has no duty to admonish a defendant or ensure an on-the-record waiver on this issue. However, when the minimal burden on the trial court in taking the time to place the matter on the record is weighed against the assurance that the constitutional right of a defendant has not been lost, it is clear the most reliable, judicially economical procedure would be to simply inquire of the defendant. If the defendant is not going to testify, the record should reflect that the defendant is aware that the right to testify belongs to the defendant; that it is neither a matter of strategy nor the prerogative of counsel. We believe it is preferable for the court to admonish or otherwise act regarding this specific constitutional right, even if there is no fixed formula of recitation or obligation to do so. Contrary to the claim of the dissent, the Illinois Supreme Court did not limit the use of admonishments; it merely decided they were not required. People v. Smith, 176 Ill. 2d 217 (1997). By creating a record that the defendant was aware that the right and decision to testify were his alone, a trial court would avoid creating a situation, such as exists in the present case, in which there is substantial doubt as to whether the defendant knowingly

and voluntarily waived the right to testify on his or her own behalf. The dissent's suggestion that admonishments of this sort be limited to "sophisticated" defendants (providing guidance to already-knowing defendants), while denying admonishments to unsophisticated defendants (those who most need the admonishments), is problematic.

Our rationale is consistent with People v. Frieberg, 305 Ill. App. 3d 840, 852 (1999), in which the court made a recommendation that, after the State has rested its case-in-chief and before the presentation of the defense case, the defendant be personally admonished that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after consulting with counsel. The dissent argues at considerable length as to how Smith controls the outcome of this case. The dissent also claims that "the analysis in Frieberg is flawed." We respectfully disagree. The supreme court in Smith stated, inter alia, "a majority of jurisdictions, and our own appellate court, have found that a trial court has no duty to advise a defendant, represented by counsel, of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred." Smith, 176 Ill. 2d at 234. Thus, if counsel were ineffective, the defendant would be effectively without counsel, and an admonishment would implicitly be required unless the record reflected a knowing, voluntary waiver of the right to testify.

For the foregoing reasons, we reverse the order of the circuit court of McHenry County denying defendant's motion for a new trial, vacate the judgment of conviction, and remand the cause for a new trial.

Reversed and vacated; cause remanded.

No. 2--05--0306

BYRNE, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

The defendant's conviction and sentence should be affirmed.

Contrary to the majority's conclusion, the trial court's determination that the defendant had not been deprived of her right to testify was not against the manifest weight of the evidence. At the hearing on her posttrial motion, the defendant was the only person to testify. She testified that she wanted to testify at trial but that her attorney would not allow her. The majority places great weight on the fact that the State did not call any witnesses to contradict her testimony. The majority claims that because her testimony was "uncontroverted," the trial court erred in not accepting it. This is incorrect. A trier of fact cannot arbitrarily reject testimony that is uncontroverted, either by positive testimony or circumstances, or where the witness is not impeached, but can reject testimony that is inherently improbable, contrary to the laws of nature, or contains its own impeachment. Burns v. Stouffer, 344 Ill. App. 105, 109 (1951). Also, in reviewing the defendant's testimony, the trial court is not required to consider it in a vacuum. Indeed, the purpose of a posttrial motion is to alert the trial court to trial errors so that a new trial may be granted if warranted. People v. Miraglia, 323 Ill. App. 3d 199, 203-04 (2001). If a trial court could not consider all the evidence at trial, it could not make a fully informed decision as to whether a new trial should be granted. Thus, in considering the defendant's testimony at the posttrial hearing, the trial court could properly consider her testimony in the context of all the material before it in the record. See Miraglia, 323 Ill. App. 3d at 203-04. The record

˘13˘

reveals that during the altercation between herself and the DCFS caseworker, the defendant told her son to remember his fifth amendment rights and that he did not have to say anything. She later gave a similar instruction to her husband. When contacted by the police, she indicated that she would not come in until she had spoken with her attorney. Such comments demonstrate that the defendant had a strong familiarity with fundamental constitutional rights. The trial court could properly take this fact into consideration in determining whether defense counsel had overborne the defendant's desire to exercise her constitutional right and to testify on her behalf. See Miraglia, 323 Ill. App. 3d at 203-04. Indeed, the trial court would have been remiss had it not considered the defendant's exhibited knowledge of her constitutional rights. See People v. Houston, 174 Ill. App. 3d 584, 589 (1988) (to reverse conviction in view of defendant's exhibited legal sophistication and knowledge would defeat the ends of justice); see also People v. Cordevant, 297 Ill. App. 3d 193, 205 (1988) (defendant's demonstrated level of sophistication indicated that he would have been capable of raising allegations before trial court). Thus, based on this record, there is ample support for the trial court's conclusion that defense counsel did not prevent the defendant from testifying but rather that the defendant chose not to testify, on the basis of trial strategy.

Nonetheless, even if the trial court erred in determining whether defense counsel had interfered with the defendant's right to testify, the defendant would not be entitled to any relief. As the majority sets forth, the right to testify is a fundamental right. See People v. Brown, 336 Ill. App. 3d 711, 719 (2002). Notwithstanding the fundamental nature of this

right, the majority then proceeds into a harmless error analysis to determine if the defendant was prejudiced. The majority also addresses this issue under the prejudice prong of Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The majority's approach, however, avoids any discussion as to whether a harmless error analysis is appropriate when such a fundamental right is at stake. This is an issue that has divided courts throughout our country. In some jurisdictions, courts have determined that the right to testify is so fundamental that it is not amenable to a harmless error analysis. See State v. Hampton, 818 So. 2d 720, 727 (La. 2002); U.S. v. Butts, 630 F. Supp. 1145, 1148 (D. Me. 1986); State v. Rosillo, 281 N.W.2d 877, 879 (Minn. 1979). Most courts that have the addressed the issue, however, have determined that a harmless error analysis is applicable or that the prejudice prong of Strickland must be established if the defendant is to prove ineffective assistance of counsel as a result of counsel's unilateral waiver of the right to testify. See Quarels v. Commonwealth, 142 S.W.3d 73, 81 (Ky. 2004) (citing cases that have so held from the Fifth, Seventh, and Ninth circuits); Momon v. State, 18 S.W.3d 152, 166-67 (Tenn. 1999) (citing cases that have so held from California, Hawaii, Michigan, New Hampshire, Utah, and Wisconsin).

In determining whether a harmless error analysis is appropriate, these courts have generally considered the issue in the context of the United States Supreme Court's decisions in Chapman v. California, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), and Arizona v. Fulminante, 499 U.S. 279, 306, 113 L. Ed. 2d 302, 329, 11 S. Ct. 1246, 1263 (1991). In Chapman, the Supreme Court adopted the general rule that a

constitutional error does not automatically require reversal of a conviction.  Fulminante, 499 U.S. at 306, 113 L. Ed. 2d at 329, 111 S. Ct. at 1263.  In Fulminante, the Supreme Court explained that a harmless error analysis is appropriate when addressing "trial errors" but not "structural defects" in the constitution of the trial mechanism.  Fulminante, 499 U.S. at 309-10, 113 L. Ed. 2d at 331, 111 S. Ct. at 1265.  Examples of structural errors include when the defendant is not represented by counsel and when the trial judge is not impartial.  Fulminante, 499 U.S. at 309-10, 113 L. Ed. 2d at 331, 111 S. Ct. at 1265.  Trial errors pertain to "error[s] which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt."  Fulminante, 499 U.S. at 307-08, 113 L. Ed. 2d at 330, 111 S. Ct. at 1264.  Examples of trial errors include a jury instruction that misstates an element of an offense, the restriction of a defendant's right to cross-examine a witness for bias, and the denial of a defendant's right to be present at trial.  Fulminante, 499 U.S. at 306-07, 113 L. Ed. 2d at 329-30, 111 S. Ct. at 1263.

The Illinois Supreme Court has not specifically addressed this issue since the United States Supreme Court issued its decision in Fulminante.  However, prior to Fulminante, the Illinois Supreme Court had determined that the deprivation of one's right to testify was subject to a harmless error analysis.  See People v. Prim, 53 Ill. 2d 62, 67 (1972) (determining that denial of defendant's right to testify at suppression hearing was harmless error).  Since Fulminante, the Illinois Supreme Court has also determined that if the

defendant claims that his counsel interfered with his fundamental right not to testify, the defendant must satisfy the prejudice prong of the <u>Strickland</u> analysis. See <u>People v. Madej</u>, 177 Ill. 2d 116, 146 (1997). Thus, it is likely that the Illinois Supreme Court would determine that the deprivation of the right to testify is subject to a harmless error analysis under <u>Fulminante</u> for the same reasons set forth in <u>Momon</u>:

"Unlike such defects as a complete deprivation of counsel or trial before a biased judge, denial of the defendant's right to testify does not in all cases render a criminal trial fundamentally unfair or call into question the reliability of the trial as a vehicle for determining guilt or innocence. Such an error involves the exclusion of testimony which is evidence that can be 'quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' <u>Fulminante</u>, 499 U.S. at 307, 111 S.Ct. at 1264. In some cases, 'the defendant's testimony would have no impact, or even a negative impact, on the result of trial.' <u>United States v. Tavares</u>, 100 F.3d 995, 999 (D.C.Cir. 1996), <u>cert. denied</u> 520 U.S. 1160, 117 S.Ct 1344, 137 L.Ed.2d 502 (1997); <u>see also</u> <u>State v. Robinson</u>, 138 Wash.2d 753, 982 P.2d 590, 599 (1999). Likewise, in some cases, denial of a defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court will simply conclude that the error was not harmless beyond a reasonable doubt. The fact that reversal may be required in some cases is no reason to eschew the harmless error doctrine entirely

when the error involved is clearly of a trial, rather than a structural nature.  Cf. Fulminante, 499 U.S. at 312, 111 S.Ct. at 1266."  Momon, 18 S.W.3d at 166.

Turning to whether in fact any error in the instant case was harmless, it is well settled that for harmless error to apply when the defendant's constitutional rights were violated, the error must be harmless beyond a reasonable doubt.  People v. Averhart, 311 Ill. App. 3d 492, 505-06 (1999).  Relying on People v. Smith, 38 Ill. 2d 13 (1967), the majority suggests that there is only one situation in which an error will be found to be harmless beyond a reasonable doubt: if the error did not contribute to the defendant's conviction.  However, in a case decided 14 years later, our supreme court clarified that there are at least two other situations in which an error will be found to be harmless beyond a reasonable doubt:  (1) if overwhelming evidence supported the defendant's conviction; or (2) if the evidence limited was cumulative or corroborative of other evidence properly presented to the trier of fact.  See People v. Wilkerson, 87 Ill. 2d 151, 157 (1981); see also Averhart, 311 Ill. App. 3d at 506 (explaining that the supreme court has set forth three different grounds to find that an error was harmless).

Here, any error was harmless beyond a reasonable doubt because the defendant's testimony would have been only cumulative to the testimony of her husband and son.  The essence of the State's case against the defendant was that she had instigated a physical altercation with a DCFS caseworker.  The State called the DCFS caseworker to testify to this effect.  In her defense, the defendant's husband and son both testified that the DCFS caseworker, not the defendant, instigated the altercation.  In her motion for a new trial, the

˘18˘

defendant did not explain how her testimony would have differed from that of her husband or son. Furthermore, at the hearing on her posttrial motion, she did not testify as to how her testimony would have differed from that of her husband or son. Because the record does not reveal that the defendant would have added any testimony that was significantly different from her husband's and son's, the defendant's testimony would have been merely cumulative. As such, any error that deprived the defendant of her right to testify would have been harmless beyond a reasonable doubt and would not have entitled her to any relief. See Wilkerson, 87 Ill. 2d at 157; see also People v. Caffey, 205 Ill. 2d 52, 92 (2001) (error in the exclusion of testimony is harmless where the excluded evidence is merely cumulative of the other evidence presented). Additionally, because any error was harmless, the defendant was not prejudiced by the alleged error, and her counsel cannot be found to have been ineffective for allegedly interfering with her right to testify. See People v. Smith, 160 Ill. App. 3d 89, 98 (1987) (error that constituted harmless error and did not prejudice defendant did not rise to the level of ineffective assistance of counsel).

In reaching a contrary result, the majority explains that "[i]n the present case, defendant was the only person who was in a position to fully express her mental state and to directly rebut the testimony of Ms. Zimmer regarding defendant's interaction with Ms. Zimmer in defendant's home." Slip op. at 8. This is not an accurate presentation of the facts. Both the defendant's husband and son witnessed the altercation and gave testimony directly rebutting the testimony of the DCFS caseworker. To the extent that the defendant's husband and son were unable to "fully express [the defendant's] mental state," this is

something that the jury could have easily inferred from the husband's and son's testimony. See People v. Foster, 168 Ill. 2d 465, 484 (1995) (jury can infer intent from character of the defendant's acts and circumstances surrounding commission of the offense, and the defendant is presumed to intend the natural and probable consequences of her acts).

The majority further states that "[c]ertainly, the denial of defendant's opportunity to present testimony that only she was capable of presenting cannot be deemed to be harmless beyond a reasonable doubt." Slip op. at 8. As noted above, there is no evidence in the record that the defendant's testimony would have been any different from her husband's or son's.

The majority also claims that the denial of the defendant's right to testify on her own behalf cannot be considered harmless, "because the two defense witnesses who did testify were seemingly impeached by their relationship with defendant and the State's argument that their testimony was compromised by their desire to keep defendant out of trouble." Slip op. at 8-9. In other terms, the majority suggests that the jury considered the defendant's husband and son biased due to their relationship to her but that it would not have viewed the defendant's testimony with the same suspicion. This line of analysis strains credulity and defies common sense. In all criminal cases, it is reasonable for the jury, in assessing witness credibility, to conclude that a defendant who elects to testify is doing so out of the desire to keep himself or herself "out of trouble." Indeed, it is well recognized that, even though a criminal defendant carries with him a presumption of

innocence throughout trial, it does not mean that, should the defendant testify, the trier of fact must necessarily accept everything the defendant says as the truth. See People v. Morgason, 311 Ill. App. 3d 1005, 1014 (2000) (jury is free to reject a defendant's testimony); People v. Johnston, 267 Ill. App. 3d 526, 532 (1994) (jury was free to reject the defendant's self-serving testimony); People v. Tirado, 254 Ill. App. 3d 497, 513-14 (1993) (jury was free to reject the defendant's denials in light of circumstances presented and all the evidence presented at trial); People v. Elston, 223 Ill. App. 3d 186, 189 (1991) (trial court was free to reject the defendant's improbable explanations); People v. McCoy, 140 Ill. App. 3d 868, 873 (1986) (jury was free to reject any or all of the defendant's testimony even though it was not directly contradicted by other eyewitnesses); People v. Feagans, 134 Ill. App. 3d 252, 261 (1985) (jury was free to reject the defendant's testimony that was contradicted by a State witness); People v. McDaniel, 125 Ill. App. 3d 694, 699 (1984) (jury was free of course to reject the defendant's testimony as to his mental state). If this were not the case, no trial of a defendant who chooses to testify and proclaims his innocence would ever result in a conviction.

Because the trier of fact is free to reject the defendant's testimony, it necessarily follows that a defendant who claims that his right to testify was violated must demonstrate how he was prejudiced by that violation. See Momon, 18 S.W.3d at 166; see also Madej, 177 Ill. 2d at 146 (determining that if defendant claims his right not to testify was violated, he must demonstrate how he was prejudiced). The mere claiming of that violation does not in itself establish that the defendant was prejudiced. See People v. Jones, 155 Ill. 2d 357,

364 (1993) (setting forth that in order for the defendant to be entitled to any relief, the defendant must prove how he was prejudiced).

Here, the defendant did not indicate how her testimony would have differed from that of any of the witnesses who testified on her behalf, a point that the majority consistently ignores. The majority's refusal to address this point undermines the entirety of its analysis that the defendant was nonetheless prejudiced.

The majority's analysis is further undermined when it shifts the burden from the defendant to the State as to determining whether she was prejudiced. In finding that the defendant is entitled to a new trial, the majority concludes "that a lack of prejudice is not established beyond a reasonable doubt." Slip op. at 10. However, it is not the State's burden to establish "lack of prejudice." Rather, it is incumbent upon the defendant to establish prejudice. That is a well-recognized rule of law that the majority even acknowledges earlier in its opinion. See slip op. at 8. Because in fact the record reveals that the defendant did not establish that she was prejudiced in this case, the majority's proclamation that she is nevertheless entitled to a new trial is clearly wrong. See Jones, 155 Ill. 2d at 364.

In responding to the concerns set forth in this dissent, the majority claims that my discussion of "law of other jurisdictions" in addressing the national split as to whether the violation of one's right to testify is subject to harmless error analysis is "immaterial." Slip op. at 10. Such a response seeks to conceal the fact that the majority's opinion is a combination of the majority and minority national positions on the issue, two positions that

are inherently irreconcilable. As explained above, the majority national position is that the violation of one's right to testify is subject to a harmless error analysis, or the defendant must satisfy the prejudice prong of Strickland. See Momon, 18 S.W.3d at 166-67. Without acknowledging this national majority position, the majority herein seemingly adopts that position. See slip op. at 8 (explaining that "[i]n dealing with the second part of the Strickland test, the defendant must demonstrate a reasonable probability that, but for the defense counsel's deficient performance, the result of the trial would have been different").

However, in resolving this appeal, the majority applies the minority national position. That position is that the violation of one's right to testify is demonstrative of prejudice in and of itself and that the defendant is automatically entitled to relief. See Hampton, 818 So. 2d at 727. There is no other way to interpret the majority's following statements:

"Certainly, the denial of defendant's opportunity to present testimony that only she was capable of presenting cannot be deemed to be harmless beyond a reasonable doubt." Slip op. at 8.

"To suggest that a trier of fact is free to reject a defendant's testimony prior to its presentation disregards the defendant's presumption of innocence. [Citation.] Until a jury is given the opportunity to weigh the testimony of the defendant, any conclusion drawn regarding deference is premature speculation." Slip op. at 9.

Indeed, such language is comparable to the language used by those courts espousing the minority national position. Cf. Hampton, 818 So. 2d at 729 ("hold[ing] that whenever a

defendant is prevented from testifying, after unequivocally expressing his desire to do so, the defendant has been denied a fundamental right and suffers detrimental prejudice").

The Illinois Supreme Court has established that it is appropriate for this court to publish a decision when that "decision establishes a new rule of law or modifies, explains or criticizes an existing rule of law." 166 Ill. 2d R. 23(a)(1). Ostensibly, the purpose of this rule is to inform all courts and Illinois legal practitioners what rules of law will be applied in this state. The majority's opinion herein does not serve that purpose. Rather, the majority's opinion creates only confusion as to whether this court is adopting the majority or minority national position on the issue presented in this case. Because of the logical inconsistencies in the majority's opinion, neither courts nor lawyers can be expected to understand whether, if one's right to testify is violated, prejudice has to be established before the defendant is entitled to a new trial. If indeed the majority believes that the violation of one's right to testify is not amenable to harmless error analysis, the majority should acknowledge that, even though such a position is contrary to how the majority of courts have resolved the issue and how the Illinois Supreme Court would likely resolve the issue as well. See Madej, 177 Ill. 2d at 146; Prim, 53 Ill. 2d at 67. Instead, by claiming that the defendant must establish prejudice, then refusing to apply that rule, the majority sets forth an illogical and incongruous opinion that contributes nothing meaningful to Illinois jurisprudence.

Finally, I am compelled to address the majority's recommendation that trial courts should admonish all criminal defendants regarding whether they are willingly giving up their

right to testify or should personally inquire of the defendants whether they are knowingly and voluntarily relinquishing that right. The majority explains that its rationale is consistent with the rationale set forward in People v. Frieberg, 305 Ill. App. 3d 840, 852 (1999). Inexplicably, only in response to this dissent does the majority even acknowledge that our supreme court has specifically held that "the trial court is not required to advise a defendant of his right to testify, to inquire whether [the defendant] knowingly and intelligently waived that right, or to set of record defendant's decision on this matter." People v. Smith, 176 Ill. 2d 217, 235 (1997). Relying on United States v. Martinez, 883 F.2d 750, 760 (9th Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir. 1991), the supreme court explained the basis for its holding:

> " 'At least seven reasons have been given for this conclusion: First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. [Citation.] Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. [Citation.] Third, by advising the defendant of his right to testify, the court could influence the defendant to waive his right not to testify, "thus threatening the exercise of the other, converse, constitutionally explicit and more fragile right." [Citation.] Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the Sixth Amendment. [Citation.] Fifth, there is danger that the judge's admonition would introduce error into the trial. [Citation.] Sixth, it is hard to say when the judge should appropriately advise the defendant--

the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. [Citation.] Seventh, the judge should not interfere with defense strategy. [Citation.]' " (Emphasis omitted.) <u>Smith</u>, 176 Ill. 2d at 235, quoting <u>Martinez</u>, 883 F.2d at 760.

Notwithstanding the supreme court's clear directive that the trial court is not obligated to inquire of the defendant whether he is knowingly and voluntarily relinquishing his right to testify, the Illinois Appellate Court, Fourth District, in <u>Frieberg</u>, 305 Ill. App. 3d at 852, determined that this was something that trial courts ought to do. The <u>Frieberg</u> court explained that following conviction, defendants who did not testify will often later claim that they really wanted to testify but that their trial counsel prevented them from doing so. <u>Frieberg</u>, 305 Ill. App. 3d at 852. In order to "defuse this explosive situation," the <u>Frieberg</u> court "urge[d] trials courts in every criminal case" to admonish the defendant before the presentation of the defense case that he alone possesses the right to choose whether to testify. <u>Frieberg</u>, 305 Ill. App. 3d at 852. The <u>Frieberg</u> court further encouraged the trial court to "inquire of the defendant before he testifies (or the defense rests without his testimony) to ensure that his decision about this matter was his alone and not coerced." <u>Frieberg</u>, 305 Ill. App. 3d at 852. The <u>Frieberg</u> court explained that the trial court's providing this admonishment would insulate the record from postconviction attacks regarding whether the defendant had made his own decision whether to testify. <u>Frieberg</u>, 305 Ill. App. 3d at 852. The <u>Frieberg</u> court further explained that if the admonishment was not given:

No. 2--05--0306

"One [could] easily imagine a postconviction petition in which the convicted defendant alleges that his trial counsel usurped the defendant's right to choose whether to testify and, at the hearing on the petition, trial counsel concedes that the defendant's allegation is true. Under these circumstances, the underlying conviction is in serious jeopardy." Frieberg, 305 Ill. App. 3d at 852.

The Frieberg court acknowledged that the Illinois Supreme Court in Smith had held that trial courts were not required to advise defendants about their right to testify or to inquire whether they were knowingly and voluntarily waiving that right. Frieberg, 305 Ill. App. 3d at 853. The Frieberg court, however, placed greater weight on a footnote in Smith that provided that defendants were still free to bring a postconviction challenge based on the denial of the right to testify. See Frieberg, 305 Ill. App. 3d at 853, citing Smith at 176 Ill. 2d at 236 n.1. Based on this footnote, the Frieberg court concluded that "[n]othing in Smith suggests that a trial court would err if, in the exercise of its sound discretion, it chose to admonish criminal defendants in the manner we now urge." Frieberg, 305 Ill. App. 3d at 853.

The analysis in Frieberg is flawed. The Frieberg court ignores the seven reasons the Smith court set out as to why trial courts should not be required to admonish criminal defendants about their right to testify or to inquire if the defendants are willingly giving up that right. Specifically, the Frieberg court does not address the supreme court's concern that, if trial courts were to admonish defendants in this regard, they would unduly influence defendants and interfere with defense counsel strategy and the attorney-client relationship.

Implicit in the supreme court's decision in <u>Smith</u> is the recognition that, by their very position, trial judges convey a strong sense of authority and power over criminal defendants. From such authority may emanate a strong amount of influence. Consequently, when trial judges question defendants whether their decision to testify (or not to testify) was theirs alone and not coerced, defendants may take such inquiries as questioning the wisdom of their decision. Defendants may then choose to testify (or not to testify) based on the trial court's inquiry, going against the well-reasoned advice that was provided by defense counsel. Such a result would interfere with defense counsel strategy and, therefore, could make the defendant's conviction more likely.

In order to avoid such interference with the attorney-client relationship, trial courts should be circumspect in inquiring of defendants whether they were coerced into not testifying. Of course in some circumstances, if the defendant is sophisticated or has an extensive history with the court system, the trial court in its discretion may properly inquire of the defendant whether he is willingly giving up his right to testify so as to prevent the defendant from later raising a potentially valid challenge as to that issue in a postconviction petition. However, admonishing every defendant just to avoid this possible issue in a postconviction petition is not sufficient justification to overlook the harm that may be caused if the trial court's admonishments or questions influence the defendant to do something that he really did not want to do. See <u>Smith</u>, 176 Ill. 2d at 235.

Beyond failing to address the concerns enumerated in <u>Smith</u> as to requiring the trial court to admonish or make inquiries of the defendant, the <u>Frieberg</u> court's justification in

recommending that all trial courts give such admonishments and make such inquiries is also flawed. The Frieberg court explains that it is important that trial courts adopt its recommendation because not all criminal defense attorneys are familiar with the relatively new law that defendants are left with the ultimate determination of whether they testify. See Frieberg, 305 Ill. App. 3d at 852. The Frieberg court also explains that if such actions are not taken, the underlying convictions may be in serious jeopardy. See Frieberg, 305 Ill. App. 3d at 852.

First, the Frieberg court's rationale is inconsistent with the presumption in Illinois law that attorneys are competent. See People v. Holman, 164 Ill. 2d 356, 369 (1995) (when reviewing a claim of ineffective assistance of counsel, the court is obligated to indulge in a strong presumption that the defendant's attorney was in fact competent). Second, the fact that the defendant has the fundamental right to decide whether to testify is not a new idea but had been well settled in Illinois for at least 13 years before the Frieberg court entered its decision. See People v. Dredge, 148 Ill. App. 3d 911, 913 (1986) (explaining that it was now generally recognized that a criminal defendant's prerogative to testify at his or her own trial is a fundamental right, which only the defendant may waive). Third, even if counsel interfered with the defendant's right to decide whether to testify, this by no means establishes that the defendant received ineffective assistance of counsel. Rather, as explained above, the defendant must still demonstrate how he was prejudiced, which is not an easy task. See Madej, 177 Ill. 2d at 146. Thus, the Frieberg court's concern that the

failure of a trial court to make the suggested admonishments or inquiries would put the "underlying convictions in serious jeopardy" is unwarranted.

In the instant case, the majority improperly adopts the rationale of the Frieberg court in determining that trial courts should admonish defendants and inquire of them whether they really intend to give up their right to testify. Like the Frieberg court, the majority also ignores the concerns set forth by the supreme court in Smith as to the making of such admonishments and inquiries. Because the majority's recommendation unduly interferes with the attorney-client relationship as well as intrudes upon the trial court's discretion to refrain from making such admonishments or inquires, I believe that the majority's recommendation is neither proper nor in the best interest of justice.