# Illinois Official Reports

## Appellate Court

---

### *People v. Clark*, 2014 IL App (1st) 130222

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUN KYUNG CLARK, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0222 |
| Filed | May 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for promoting prostitution at a spa was upheld where a rational trier of fact could have found beyond a reasonable doubt that defendant knew or should have known that prostitution was occurring at the spa where she worked at the reception desk, and defendant's contention that she was deprived of a fair trial, due process and her privilege against self-incrimination because of the court-appointed interpreter's translation errors was rejected, since she forfeited the issue by failing to object at trial and did not raise the issue on appeal. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-16851; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lauren Kaeseberg, of Chicago, and Joseph N. DiNatale and Michael P. DiNatale, both of DiNatale Law Offices, P.C., of North Riverside, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Susanna Bucaro, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant argues that her conviction for promoting prostitution at a spa should be reversed because the State failed to present sufficient evidence that she had control of the spa and knew prostitution was occurring there. 720 ILCS 5/11-14.3(a)(1), 11-0.1 (West 2010). Eun Kyung Clark, whose first language is Korean, also contends errors by the court-appointed interpreter in translating her testimony violated her right to a fair trial and due process and impinged on her fifth amendment right against self-incrimination. Lastly, Clark asserts the trial court's credibility determinations in favor the State were against the manifest weight of the evidence.

¶ 2    We affirm. Based on all of evidence presented, a rational trier of fact could have found Clark knew or should have known prostitution was occurring at the spa. Regarding the competency of the interpreter, Clark forfeited this issue by failing to object at trial and failing to raise plain error review in her brief. (Clark did not file a reply brief.) Finally, Clark has not presented a basis to disturb the court's credibility determinations.

¶ 3                                    BACKGROUND
¶ 4    In September 2011, Nabi Spa in Lansing, Illinois, became the target of an undercover operation by the Cook County sheriff's office in response to complaints that prostitution was taking place. On the evening of September 8, 2011, two sheriff's office investigators, Robert Gassman and Dan Schaller, posed as spa customers. Gassman entered the spa first, at about 7 p.m. He testified the spa has a small vestibule area with a camera and a locked metal door. Gassman rang a door bell, and Clark admitted him into the reception area. Clark asked Gassman if he wanted a massage and offered him the option of a half-hour or full-hour massage. Gassman asked for a half-hour massage and handed Clark $50 in marked bills. Clark took Gassman to a room about 10 feet from the reception area and instructed him to remove his clothes and put on a towel and slippers. Clark left the room and shortly after, Lee,

another spa employee entered. Gassman testified Lee was wearing a tight blue dress with a very short skirt. Lee took Gassman to the "table shower" room, which Gassman described as an eight-foot-by-five-foot room with a large shower and a table with a vinyl covering. On the way to the shower table room, Gassman, walked past Clark at the front desk. In the shower table room, Lee took Gassman's towel off and had him lie down on the table with no clothes on. Lee also disrobed and washed Gassman's entire body, front and back.

¶ 5        After the table shower, Lee put her dress back on and took Gassman back to the massage room, again passing Clark in the reception area. Lee asked Gassman what he wanted, which Gassman understood to mean what sexual acts he wanted performed. When Gassman told Lee he wanted a "hand job," she told him that would cost an additional $60. Gassman put $60 on a table then left to the use the restroom. When Gassman returned, he told Lee he wanted "everything," by which he meant "full sex." Lee informed Gassman the price was $130. Gassman told Lee he did not have enough money, put his clothes back on, told Lee she could keep the $60, and left. Gassman saw Clark again as he was let out of the building through a side door.

¶ 6        On cross-examination, Gassman agreed that Clark never spoke to him about sexual favors and never saw him naked. He said the $50 he gave Clark when he entered the spa and the $60 he left on the table for Lee were found together in a bank bag, but acknowledged the police report indicated the $60 was found in the spa but did not say the money was commingled.

¶ 7        Investigator Dan Schaller arrived at Nabi Spa at about 7:30 p.m. that evening. He rang the doorbell, and Clark let him in. Schaller told Clark he wanted a half-hour massage and paid her $50. Clark took Schaller to a room down the hallway and introduced him to Choi, the woman who would be giving him the massage. Schaller testified Choi was wearing a black miniskirt and a white halter top. On the way to the massage room, Clark asked Schaller if he wanted a "table shower," but she did not respond when Schaller asked her if it would cost extra. When they arrived at the massage room, Clark said to Choi, "table shower."

¶ 8        In the massage room, Choi asked Schaller to get undressed and put a towel around him. Choi escorted Schaller down the hall, past the front desk where he saw Clark, and into the table shower room. Choi told Schaller to lie on his stomach and she washed his back side. When Schaller rolled over, he saw Choi had removed her halter top. Back in the massage room, Choi asked Schaller if he wanted anything extra. When he told her he wanted a "hand job," she held up 7 fingers and said, "70." Schaller gave Choi $70 in marked bills. He then told Choi he was married and was having second thoughts. Choi told Schaller to think about it and left the room. Schaller sent a text to his arrest team and about a minute later, seven or eight sheriff's officers entered the spa. Clark and three other women were arrested.

¶ 9        While still at the spa, Schaller asked Clark where she kept the money he and Gassman had given to her for the massage. Clark brought them to an office across the hall from the massage room and gave him a bank bag containing $1,400. The bag included the $60 Gassman had given Lee. The $70 Schaller had given to Choi was still in the massage room. On cross-examination, Schaller said the police report, which failed to specify that the $60 was found in the bank bag, was incorrect.

¶ 10       Clark was taken to the police station and questioned by Schaller and another officer. Schaller said Clark was able to talk with him and did not ask for an interpreter. Clark signed a form waiving her *Miranda* rights and made an oral statement. Clark said she had been

working at Nabi Spa for a couple of months and that her job included accepting payments for massages and depositing the money in a bank in Hobart, Indiana. Clark thought the spa owner was named Scott and lived in California. Clark said she was paid $150 per day and spent about 13 hours there, opening the spa at 9 a.m. and closing it at 10 p.m.

¶ 11      Clark testified at trial with the assistance of a court-appointed interpreter. She said she and her husband ran a cleaning business, but she applied for a job at Nabi Spa in July 2011, when the cleaning business was not doing well. She has had a license from the National Certification Board of Therapeutic Massage since 2004, and she sought a massage therapist position but was hired to work at the front desk, answer phones, and clean the building. She said she never discussed sexual favors with Gassman or Schaller, and they gave her money for a massage only and nothing extra. She also said neither Lee nor Choi gave her any extra money to put in the bank bag. She testified she did not know any of the massage therapists were offering sexual acts to customers.

¶ 12      The trial court found Clark guilty of promoting prostitution. In issuing its verdict, the trial court stated, "This is a matter of credibility. First of all, she was hired to answer phones, and then she comes *** here and doesn't speak a word of English. It kind of refutes that whole idea that she doesn't understand what's going on. Number two, in fact, at times, she was arguing with the interpreter at what was being translated or what was being said. Number three, why would an officer say [the] $70 that was found–that was left in that third room was left there? If they were going to lie, they would have said the entire amount would have been put in the bag. As opposed, that officer testified credibly. The *** $60 was found in the bag commingled with the other money. The $70 was not there. I think that the officers testified credibly. This thing that even though the police report doesn't specifically say–the police report is a summary. Based upon all of the evidence, I find the defendant guilty."

¶ 13      Clark filed a motion for a new trial. The trial court denied the motion and sentenced Clark to two years of probation. She filed a timely notice of appeal.

¶ 14                                ANALYSIS

¶ 15                          Sufficiency of Evidence

¶ 16      Clark first contends her conviction should be reversed because the State failed to present sufficient evidence to sustain a conviction for promoting prostitution. Specifically, Clark asserts the State failed to prove two elements of the offense beyond a reasonable doubt: (1) that she had control over the premises where the prostitution occurred and (2) that she knew prostitution was occurring there.

¶ 17      When presented with a challenge to the sufficiency of evidence, our inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Givens*, 237 Ill. 2d 311, 334 (2010). We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). The trial court must determine the credibility of witnesses, weigh the evidence, draw reasonable inferences, and resolve any conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). All reasonable inferences from the record must be allowed in favor of the State. *Givens*, 237 Ill. 2d at 334.

¶ 18    A person commits the act of promoting prostitution if he or she knowingly advances prostitution as defined in section 11-0.1 of the Criminal Code of 1961 (720 ILCS 5/11-14.3(a)(1) (West 2010)). Section 11-0.1 provides that advancing prostitution includes:

"Keeping a place of prostitution by controlling or exercising control over the use of any place that could offer seclusion or shelter for the practice of prostitution and performing any of the following acts when acting other than as a prostitute or a patron of a prostitute:

(A) Knowingly granting or permitting the use of the place for the purpose of prostitution.

(B) Granting or permitting the use of the place under circumstances from which he or she could reasonably know that the place is used or is to be used for purposes of prostitution.

(C) Permitting the continued use of the place after becoming aware of facts or circumstances from which he or she should reasonably know that the place is being used for purposes of prostitution." 720 ILCS 5/11-0.1 (West 2010).

¶ 19    We disagree with Clark's contention that the State failed to present sufficient evidence that she exercised control over the spa and knew prostitution was occurring there. First, as to control, Gassman and Schaller testified that the front door to Nabi Spa was locked and they had to ring a doorbell to gain entry. Clark, who worked at the reception desk, unlocked the door and allowed them to enter. Clark informed the officers of the services available, made the arrangements for each to get a half-hour massage, and then led the men to the massage room. Clark opened and closed the spa every day, took reservations, answered the phones, kept the spa clean, and had sole responsibility for accepting payments and running the credit card machine. Clark also maintained control of the spa's revenue. When Schaller asked her where the money from the spa was kept, Clark took him to an office and showed him a bank bag containing $1,400. Clark told Schaller she deposited money for the spa owner at a bank in Indiana. In short, the evidence showed Clark was at the spa during all hours of operation, granted access to the building, directed customers where to go, and managed the finances. In the absence of the spa owner, who resided in California, Clark appeared to be managing the spa to a degree that would lead a reasonable person to conclude she was exercising control over it.

¶ 20    The evidence was also sufficient to establish that Clark knew or reasonably should have known prostitution was occurring at the spa. Although Clark testified Gassman and Schaller gave her $50 for a massage only and nothing extra and that neither Lee nor Choi gave her any extra money, the $60 Gassman gave to Lee was found in the bank bag that was in Clark's control. Clark worked at the front desk and handled the money at the spa, including bank deposits. Payment of an additional $60 directly to a massage therapist for a massage that cost $50, when coupled with the other evidence, including the provocative clothing worn, would reasonably lead a person, particularly one with a massage therapy license, to the conclusion that something other than a massage was occurring at the spa.

¶ 21    The record supports Clark's contention that she never directly discussed sexual favors with either officer, but the evidence shows she took Gassman to the massage room and told him to disrobe completely and put on a towel. (Clark contends customers were given paper underwear to put on, but both officers testified they were only given towels.) Clark asked Schaller whether he wanted a "table shower," a service that involved the naked officers being

- 5 -

cleaned by a partially clothed or naked massage therapist. Although Clark was not present in the room when this service was provided, she was responsible for cleaning the spa and thus would presumably know what the table shower room was. She also saw the manner in which the massage therapists were dressed and, knowing the officers were only provided towels, should have known that at this spa, the shower table offered something altogether removed from, say, a mineral or mud bath offered by a legitimate spa. After his appointment, Gassman was let out a side door not the front door, which would lead a reasonable person to think customers did not want to be seen leaving the building. Given all the evidence, a rational trier of fact could have found beyond a reasonable doubt that Clark knew or should have known prostitution was taking place at the spa.

¶ 22                     Errors by the Court-Appointed Interpreter

¶ 23    Clark next argues translation errors by the court-appointed interpreter deprived her of a fair trial, due process, and her fifth amendment right against self-incrimination. Clark contends the interpreter summarized and did not accurately translate her testimony and made several errors, including telling her she was found not guilty. She also asserts her conviction rested primarily on the trial court's determination that she was not credible, largely due to the interpreter's poor performance. Clark notes that when addressing the credibility issue while reading his verdict, the trial judge cited her arguments with the interpreter as casting doubt on her assertion that she did not understand what was going on. Clark contends the trial judge became frustrated with the interpreter as evidenced by his admonishment to her to stop having conversations with Clark before translating her answers, and he took this frustration out on her by finding her guilty and, thus, her conviction should be reversed.

¶ 24    As a threshold issue, we address the State's contention that Clark waived this issue by failing to raise any objection at trial. To preserve an issue for review, a defendant must object at trial and raise the matter in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Under Illinois's plain error doctrine, a reviewing court may consider a trial court error not properly preserved for review when the evidence in a criminal case is closely balanced or where the error is so fundamental that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. Where a defendant also failed to raise plain error on appeal, he or she has also forfeited the plain error issue. *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010). Further, under Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), points that are not argued in the opening brief are waived and shall not be raised in defendant's reply brief. Here, Clark not only failed to raise an objection to the interpreter at trial, she did not raise plain error in her brief and did not file a reply brief. Thus, she has forfeited review of this issue.

¶ 25                     Trial Judge's Credibility Determinations

¶ 26    Lastly, Clark contends the trial court's finding that the State's two witnesses were credible but she was not credible was against the manifest weight of the evidence. A trial court's credibility determinations are entitled to great deference, and they will rarely be disturbed on appeal. *Siguenza-Brito*, 235 Ill. 2d at 224. When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *Id.* at 233. Where findings of fact depend on the credibility of witnesses, a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the

evidence. *People v. Whiting*, 365 Ill. App. 3d 402, 406 (2006). A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 27 Here, the trial found Clark's credibility was placed in doubt by her assertion that she could not speak English well enough to testify in court without an interpreter. The court noted that she was hired to work at the front desk and answer phones at the spa, which presumably would require a working knowledge of English. The court also noted that Clark had conversations with the interpreter over her translation of Clark's testimony, which would further suggest she was able to understand the question asked and the answer given by the interpreter. Schaller testified he interviewed Clark and she was able to understand him without an interpreter. The trial court was able to assess Clark's demeanor on the witness stand, including her interactions with the interpreter, to determine her credibility. The court's finding that she was not credible in asserting she did not know prostitution was occurring at the spa was not unreasonable, arbitrary, or based on something other than the evidence.

¶ 28 The trial court's finding that the State's witnesses were credible was also not against the manifest weight of the evidence. The court concluded that the investigators were not lying when they said they found the money given to Lee commingled with the money they had earlier given to Clark. The court noted that the police report failed to mention the commingling of funds but concluded the officers would not have lied about that and thus found them believable. Again, the court had the opportunity to hear the officers' testimony and see their demeanor on the stand and concluded they were testifying truthfully. This finding was not against the manifest weight of the evidence.

¶ 29 For the above reasons, we affirm the circuit court.

¶ 30 Affirmed.