2022 IL App (1st) 200746-U

FIRST DISTRICT,
FIRST DIVISION
June 13, 2022

No. 1-20-0746

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 CR 25831 |
| | ) | |
| IVIVA PAIGE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Presiding Justice Hyman dissented.

**ORDER**

¶ 1    *Held*: Circuit court order granting the defendant's petition for postconviction relief following a third-stage evidentiary hearing reversed where the defendant's claim that her trial counsel rendered ineffective assistance by depriving her of her constitutional right to testify is positively rebutted by the record.

¶ 2    After a bench trial, the circuit court found defendant, Iviva Paige, guilty of first-degree murder and sentenced her to 23 years in prison. We affirmed her conviction and sentence on direct appeal. *People v. Paige*, No. 1-08-2102 (2010) (unpublished order under Illinois Supreme Court Rule 23). Defendant later filed a post-conviction petition. Appointed counsel filed a supplemental petition alleging defendant's trial counsel was ineffective for depriving her of her right to testify.

After a third stage evidentiary hearing, the circuit court found for defendant, vacating her conviction and ordering a new trial.

¶ 3         On appeal, the State argues that defendant's petition should have been denied because she did not provide evidence of making a contemporaneous assertion of her right to testify at trial. The State insists on this outcome for two reasons: (i) defendant did not make an on-the-record statement indicating her desire to testify, (ii) she appeared to understand the circuit court's admonishments and responded that she did not want to testify. We agree and, accordingly, reverse the circuit court's judgment.

¶ 4                                    BACKGROUND

¶ 5         Our review concerns defendant's post-conviction petition alleging ineffective assistance of counsel based on a deprivation of her right to testify, where on direct appeal we upheld her conviction. Understanding that claim requires a review of the facts of the underlying crime.

¶ 6         In the late hours of October 11, 2006, two groups traveling separately and independently twice found themselves at the same Chicago dance clubs. One group comprised defendant, her sister Claretha Paige, her sister Kesha Paige, and a friend Leslie Wesley. The second group comprised defendant's ex-boyfriend Devon Heath, his then-girlfriend Roshanda Wallace, and the victim Katrina Adams.

¶ 7         Defendant, Claretha, Kesha, and Leslie visited Carolyn's, a dance club. Sometime later that evening, Heath, Adams, and Roshanda arrived at Carolyn's. At this time, an order of protection prohibited Heath from having contact with defendant. When Heath and defendant noticed each other, an argument ensued, and defendant grabbed Heath's ear and knocked out his earring.

¶ 8         Defendant and her group then left Carolyn's and went to another club, Vanity's. Before getting out of the car, defendant expressed fear of running into Heath again and feared he might follow her to Vanity's and start a fight. Defendant asked if Claretha had anything "for protection"

and then grabbed a "steak knife" out of the car's console. Defendant wrapped the knife in a bow and placed it in her purse. Claretha and Leslie told defendant not to take the knife into the club. Defendant put the knife in her purse and entered the club.

¶ 9    Vanity's contained two floors: the main bar on the first floor and a dance floor with a smaller bar on the second floor. Between 15 minutes to an hour later, Heath and his group arrived at the club and went upstairs. When Leslie saw Heath enter the club, she asked defendant whether she wanted to leave, to which defendant responded, "I'm cool, I'm fine." While Claretha and Leslie remained downstairs, defendant and Kesha went upstairs to the second floor.

¶ 10    On the crowded dance floor, somebody struck Heath while he was dancing with Roshanda, though he could not tell who. Roshanda testified to seeing defendant "smack" a friend named Chris. Then, a fight erupted between multiple people, including Kesha and Heath. Someone called for security, who removed Heath from Vanity's. Security personnel also had to break up a fight between defendant and Katrina during which the two women threw punches and pulled each other's hair. On direct appeal, this Court found that the trial evidence established that defendant instigated the fight. Security personnel removed Katrina and some others in her party first, holding defendant upstairs "until the front cleared." One of the security guards, Paulette Brady, kept defendant in a headlock until she calmed down.

¶ 11    After being removed, Roshanda took some mace from Katrina and remained in the immediate area outside of Vanity's. Another fight began when security later escorted defendant, Claretha, and Leslie outside. Our order on direct appeal described the fight between defendant and Katrina as "mutual combat." Claretha and Leslie testified that someone sprayed mace within seconds of leaving Vanity's, while Roshanda testified that she sprayed the mace when defendant's sisters ran at her. The mace dispersed the crowd that had begun to gather, though defendant and Katrina continued to fight. They moved from the sidewalk into the street, trading punches.

Defendant pushed Katrina onto the hood of a Lexus and continued to strike her. George Seals, who was in his vehicle, saw defendant appear to punch Katrina but observed blood "spurt out" from Katrina after the punch. Merlin Durham, another security guard, saw defendant punch Katrina with a knife in her hand. Brady thought she saw someone give defendant the knife after the mace had been sprayed but could not identify the individual. Brady testified that she saw defendant stab Katrina repeatedly. When defendant and Katrina got off the hood of the car, bystanders could see blood coming from Katrina. No one saw Katrina with a weapon. Paramedics and police were called, and Katrina subsequently died as a result of stab wounds to the chest.

¶ 12   Defendant gathered Claretha and Leslie and drove to a store for water to rinse mace out of Claretha's eyes. When they passed the location of the fight, defendant told Claretha, "I got that bitch." Defendant scolded Leslie for not helping her defend herself. Defendant tossed the knife out of the car as they continued, not knowing police were following.

¶ 13   Officer John Haleas stopped defendant for driving erratically and arrested her for driving on a suspended license. When he heard about the fight at Vanity's and realized defendant matched the description, Haleas asked defendant what had happened. Defendant responded that she "stabbed that bitch" and that she "was defending [herself]." The State charged defendant with first degree murder for killing Katrina Adams.

¶ 14   Trial counsel asserted the affirmative defenses of self-defense and mutual combat. At the close of the State's case, defense counsel moved for a directed finding on the basis the State had failed to prove the intent required for first degree murder. The court denied the motion and admonished defendant about her right to testify:

THE COURT:   Ms. Paige, you have a constitutional right to testify in this
case. You also have a constitutional right not to testify in this
case. You are the only person that can make that decision.
After listening to the testimony in this case and discussing

> this matter with your attorney is it your desire to testify or not testify in this case?
>
> DEFENDANT:     No.
>
> THE COURT:     Okay, when you say no, does that mean that you don't want to testify?
>
> DEFENDANT:     I don't want to testify.
>
> THE COURT:     Okay. Based upon my observations of Ms. Paige over the pendency of this matter and the response to this question that I just asked her, I find that this decision has been made knowingly and voluntarily.

The defense then rested.

¶ 15     The court found defendant guilty, citing insufficient provocation to support defendant's self-defense claim. On direct appeal, this court affirmed her conviction and sentencing, finding defendant's conduct was not a "proportionate response" to Katrina's conduct.

¶ 16                             Post-Conviction Proceedings

¶ 17     Defendant filed her initial *pro-se* post-conviction petition in 2011, raising several claims. The court-appointed counsel filed a supplemental petition in March 2018. The supplemental petition added a claim that defendant "did not knowingly and intelligently waive her right to testify and was deprived of effective assistance of trial counsel and right to a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 2 and 8 of the Illinois Constitution because trial counsel failed to inform defendant that she had a fundamental right to testify, regardless of counsel's advice." The State argued for dismissing all claims except the right to testify, which the circuit court granted.

¶ 18     The right to testify claim went to a third-stage evidentiary hearing. During the hearing, defendant testified that, throughout her murder trial, trial counsel never visited her at Cook County Jail. She first spoke with him in the bullpen before her first court appearance. After that, defendant

and her counsel primarily talked by phone. During those conversations, defendant would suggest areas of inquiry, evidence that might be useful, or witnesses whom counsel could interview. She would "throw things out." According to defendant, their in-person conversations were essentially short discussions about the next court date.

¶ 19    Defendant testified that she and trial counsel rarely discussed, and never discussed in detail, her right to testify and the decision to testify. They only spoke about her case in person once: the first time they spoke. Counsel initially told defendant she would be testifying. But, when the trial began, her counsel changed his mind. He told defendant that it "wasn't a good idea." Directly before the trial judge admonished her on her right to testify, trial counsel told her to "say no" to the judge's questions. Defendant never brought up her desire to testify to the trial judge because she was "going off what [her] lawyer told [her]," and she did not know that she either could or should say otherwise.

¶ 20    If she had testified at trial, defendant would have said that Heath initiated the confrontation at Carolyn's. Instead, out of fear of Heath following them, she asked Claretha for something to protect herself. She went upstairs at Vanity's to dance, and a fight between Kesha and Heath began later. Security held defendant upstairs for about an hour before escorting her out. On leaving, Katrina immediately sprayed her with mace. Defendant then turned to go back into Vanity's, the most immediate safety from the mace. Since club security had locked the doors, defendant believed she had no option other than to defend herself by fighting with Katrina, the person who had just attacked her. After the fight moved into the street, defendant saw Roshanda drive up and hand Katrina a knife. That's when defendant grabbed her knife and "came up swinging."

¶ 21    On cross-examination, defendant testified that leading up to and during the trial, she would talk on the phone with trial counsel two to three times a week, but he would promise to "try" to visit her soon. Defendant acknowledged not remembering whether she had told the police about

seeing Roshanda hand a knife to Katrina. She also acknowledged understanding that the trial judge explained that she had a constitutional right to testify and had asked whether she wanted to testify. But defendant reiterated that she had said no because her counsel had instructed her to say no, and she did not know she should have said that he told her to answer that way.

¶ 22   Trial counsel testified he had practiced criminal defense for 43 years. He discussed the issue of defendant testifying with her "numerous times prior to the case going to trial." He told defendant that she had the right to call witnesses, call herself as a witness, and present her point of view. When asked if he ever changed his mind about her testifying, he said: "No. All I do with clients basically is tell them they have the right to testify, they've sat through the evidence, evaluated the evidence, and if they want to testify, they can testify. If they don't want to, they can't. I don't tell them whether to testify or not to testify."

¶ 23   Trial counsel did not recall if he visited defendant at the jail. He did recall speaking to her about the trial judge asking if she wanted to testify while the State was in the middle of arguing against a directed finding. Trial counsel did not testify to any other conversations on the subject. And he denied telling defendant to tell the judge she did not want to testify.

¶ 24   On cross-examination, trial counsel admitted that he had not discussed anything substantive with defendant over the phone. He also acknowledged that he never gave his opinion on whether defendant should testify and never gave defendant sample questions or an understanding of what to expect if she did testify.

¶ 25   Defendant's appointed counsel argued that trial counsel's (i) failure to prepare defendant for trial, (ii) failure to visit her in jail, and (iii) failure to call her as a witness after raising a claim of self-defense met both prongs of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The State argued that Illinois law imposed a strict

"contemporaneous assertion" requirement for the right to testify claims in post-conviction proceedings.

¶ 26    The circuit court found ineffective assistance of counsel, reasoning that trial counsel's testimony largely corroborated defendant's testimony. In addressing the State's argument, the court found that Illinois's contemporaneous assertion requirement was not a rigid rule, and counsel's lack of preparation deprived defendant of the opportunity to "make a knowing decision" on her right to testify. After finding both prongs of *Strickland* met, the court ordered a new trial. The State now appeals.

¶ 27                                          ANALYSIS

¶ 28    On appeal, the State argues that the circuit court erred in granting post-conviction relief for two primary reasons. First, *People v. Knapp*, 2020 IL 124992, controls and defendant never made the "contemporaneous assertion" of her right to testify that *Knapp* requires. Secondly, defendant's decision to tell the circuit court "I don't want to testify" demonstrates a knowing waiver.

¶ 29    In response, defendant argues that her waiver of the right to testify could not be knowing, intelligent, or voluntary because her attorney failed to meaningfully advise her of the ramifications of such a decision.

¶ 30    The Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*, provides a method by which defendants can challenge their conviction as having been based in whole or in part on a substantial denial of rights under the U.S. Constitution, the Illinois Constitution, or both. This method is considered a collateral attack on the judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21.

¶ 31    The Act divides proceedings into three stages. At the first stage, a petition will be promptly docketed for second stage proceedings when neither "frivolous" nor "patently without merit" when taking the allegations as true. 725 ILCS 5/122-2.1(a)(2). At the second stage, the State may file either a motion to dismiss or an answer. 725 ILCS 5/122-4; 725 ILCS 5/122-5. Here, the State

chose to file a motion to dismiss all claims raised except the right to testify. Unless dismissed, the claims advance to a "third-stage" evidentiary hearing. 725 ILCS 5/122-6; *People v. Domagala*, 2013 IL 113688, ¶34. At the third stage, the defendant bears the burden by a preponderance of the evidence of making a "substantial showing" supporting his or her claim. *People v. Coleman*, 2013 IL 113307, ¶ 92.

¶ 32        On review from the third stage, we only reverse findings of fact when manifestly erroneous. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 152. We review *de novo* pure questions of law, including the ultimate decision of whether the facts showed ineffective assistance and warranted post-conviction relief. *People v. English*, 2013 IL 112890, ¶24; *People v. Velasco*, 2018 IL App (1st) 161683, ¶137.

¶ 33        Here, the circuit court heard testimonial evidence from defendant and her trial counsel at the third stage evidentiary hearing. Accordingly, its judgement will not be disturbed unless it is manifestly erroneous.

¶ 34        On review, the only issue before this court is whether the circuit court erred in finding that defendant established by the preponderance of the evidence that trial counsel rendered ineffective assistance by depriving her of her constitutional right to testify. To prevail on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and establish both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced defendant. *Id.* at 686-89.

¶ 35        Every criminal defendant has the fundamental constitutional right to decide whether to testify at trial. *Knapp*, 2020 IL 124992, ¶ 46; *People v. Madej*, 177 Ill. 2d 116, 145-46 (1997). Although an attorney may advise his or her client on the potential consequences of testifying, the ultimate decision whether to exercise that right belongs only to the defendant, (*Knapp*, 2020 IL

124992, ¶ 46; *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009)), and only the defendant may waive the right to testify (*Madej*, 177 Ill. 2d at 146). Generally, an attorney's performance will not be found ineffective simply because counsel advised the defendant not to testify; rather, counsel will only be found to be ineffective where the "evidence suggests that counsel *refused to allow* the defendant to testify." (Emphasis added.) *Youngblood*, 389 Ill. App. 3d at 217.

¶ 36      We find that the circuit court erred in granting defendant's petition because her ineffective assistance claim is positively rebutted by the record. The State argues, and we agree, that the supreme court's decision in *Knapp* controls the outcome of this case.

¶ 37      In *Knapp*, the defendant claimed in his postconviction petition that he unknowingly and involuntarily waived his right to testify due to trial counsel's ineffective assistance. *Knapp*, 2020 IL 124992, ¶ 33. At trial, after the circuit court admonished the defendant of his right to testify, the defendant advised the court that he understood the decision to testify was his and his alone. *Id.* ¶ 26. The circuit court ultimately dismissed the petition at the first stage, the appellate court affirmed, and the supreme court affirmed the appellate court's judgment. *Id.* ¶¶ 2, 35. The supreme court explained that, because the circuit court informed the defendant that he had a right to testify, and the defendant affirmed that he did not want to testify at trial after counsel's allegedly deficient conduct, the record positively rebutted the defendant's ineffective assistance claim and it was therefore subject to summary dismissal. *Id.* ¶¶ 51-54, 58.

¶ 38      In doing so, the supreme court reiterated the principle that "[t]o preserve the right to testify, a criminal defendant is required to make a 'contemporaneous assertion' of that right." *Id.* ¶ 46 (citing *People v. Enis*, 194 Ill. 2d 361, 399 (2000), *People v. Smith*, 176 Ill. 2d 217, 236 (1997), *People v. Thompkins*, 161 Ill. 2d 148, 177-78 (1994), and *People v. Brown*, 54 Ill. 2d 21, 24 (1973)). The court further explained, "petitioner's responses during the trial court's admonishments unequivocally rebut his allegations that his decision not to testify was involuntary

or based on allegedly erroneous advice from counsel." *Id.* ¶ 54. Thus, even where the general threshold to survive first-stage review was low and the defendant was only required to state the "gist" of a constitutional claim, the failure to contemporaneously assert his right to testify doomed the defendant's ineffective assistance claim. *Id.* ¶ 35; *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 39       In this case, defendant claims that she did not make a knowing and voluntary waiver of her right to testify because her counsel did not inform her that she had a fundamental right to testify. We note, however, that defendant was admonished in open court about her right to testify. Specifically, the circuit court explained that defendant had a constitutional right to testify or not testify, and that she was the only person that could make that decision. The circuit court then inquired whether defendant chose to testify "[a]fter listening to the testimony in this case and discussing this matter with your attorney." Defendant responded simply, "No." The circuit court inquired further, and defendant unequivocally stated, "I don't want to testify." Thus, as in *Knapp*, defendant's responses in open court rebut her claim that she involuntarily waived her right to testify. It follows that defendant's claim is positively rebutted by the record and that the circuit court erred in granting defendant's postconviction petition.

¶ 40       The testimony of defendant and her trial counsel at the third-stage evidentiary hearing does not undermine this finding. Defendant and counsel agreed that they discussed the possibility of defendant testifying before trial began. While defendant claimed that she wanted to testify, she admitted that she never expressed this desire to her counsel at any point before or during the trial, despite talking on the telephone two to three times per week. Defendant further admitted that she understood the trial judge's admonishments about the right to testify and answered the court's questions of whether she wished to testify. There is simply nothing in the record to indicate that defendant ever expressed a desire to testify or made a contemporaneous assertion of her right to do so. Defendant did not express any confusion about her rights or hesitancy in waiving her right

to testify. See *People v. Smith*, 2021 IL App (1st) 180550-U, ¶ 43 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)). Instead, defendant's straightforward answer to the circuit court's admonishments, "I don't want to testify," positively rebuts the ineffective assistance allegation.

¶ 41    The circuit court's specific admonishments prior to defendant waiving her right to testify distinguish this case from the direct appeal in *People v. Whiting*, 365 Ill. App. 3d 402 (2006), which the circuit court relied upon in granting defendant's posttrial petition in this case. In *Whiting*, the reviewing court noted that the evidence was "uncontroverted" and found "there is nothing in the record indicating the trial court either admonished defendant about her right to testify or inquired if she knowingly and voluntarily waived her right to testify on her own behalf regardless of any advice given to her by her counsel." *Id.* at 403. In this case, the circuit court indisputably admonished defendant about this right and twice inquired whether she wished to testify.

¶ 42    The decision to testify belonged to defendant alone and the circuit court admonished defendant as such. Defendant's claim of ineffective assistance based on a deprivation of her right to testify is positively rebutted by the record where defendant failed to contemporaneously assert that right and, instead, unequivocally stated, "I do not wish to testify."

¶ 43                                CONCLUSION

¶ 44    Based on the foregoing, the judgment of the post-conviction hearing court granting a new trial is reversed.

¶ 45    Reversed.

¶ 46    PRESIDING JUSTICE HYMAN, dissenting:

¶ 47    The majority's conclusion rests on material oversimplifications of the record and the law. On the record, the majority's analysis ignores Paige's evidentiary hearing testimony that her counsel failed to advise her about her right to testify; he went further and obstructed the

effectiveness of the trial court's admonishments by feeding her his preferred answer. On the law, the contemporaneous assertion requirement described in *People v. Knapp*, 2020 IL 124992 (expounding "contemporaneous assertion" rule) is not absolute. A careful reading of *Knapp* reveals that the Supreme Court kept open the possibility that counsel's interference with the trial court's admonishments may be severe enough for the admonishments to become meaningless. As such, the trial court did not manifestly err in granting a new trial on these facts.

¶ 48    The State's extreme position now has been adopted by the majority—that the contemporaneous assertion rule bars claims of ineffective assistance of counsel even where counsel provided concededly deficient advice which had a weighty impact on the outcome. But neither our supreme court's cases nor case law analyzing ineffective assistance claims in similar contexts dictate the majority's result. So I respectfully dissent.

¶ 49    I also dissent from the majority's choice to issue this decision as an unpublished order under Illinois Supreme Court Rule 23(b).

¶ 50        A No Exception Rule Is Antithetical to Illinois Supreme Court Precedent

¶ 51    Reading cases like *Knapp* to foreclose *any* exception to the contemporaneous assertion rule conflicts with cases where defendants argue ineffective assistance of counsel for failing to advise them properly about waiver of a fundamental right. Take guilty pleas as one example. Just like the right to testify, the right to plead guilty or not belongs exclusively to a defendant. *E.g., People v. Phillips*, 217 Ill. 2d 270, 281 (2005). And in the plea context, even where the trial court "adequately admonished the defendant as to the consequences of his plea, the admonishment by the court [does] not have the effect of obliterating from [the defendant's] mind the previous misrepresentations made to him by counsel." *People v. Correa*, 108 Ill. 2d 541, 552 (1985) (citing *People v. Morreale*, 412 Ill. 528, 530 (1952)). I see no reason to treat right to testify admonishments as an anomaly. Our Supreme Court left open the possibility in other contexts that counsel can be ineffective for

giving bad advice *despite* the trial court's on-record admonishments about a defendant's decision to waive his or her rights. Accordingly, I urge the Supreme Court to examine the contemporaneous assertion rule and bring it in line with its other cases addressing similar ineffective assistance claims.

¶ 52                              Evidentiary Hearing Testimony

¶ 53        I first part company with the majority on its central factual premise: "There is simply nothing in the record to indicate that [Paige] ever expressed a desire to testify or made a contemporaneous assertion of her right to do so." *Supra*, ¶ 40. The record, however, belies that conclusion.

¶ 54        On cross-examination at the evidentiary hearing, Paige told counsel she "wanted to tell [her] story *** probably two times." Although Paige could not remember when she told counsel, the context of the State's questions suggests after trial but before sentencing. Even so, the majority to support its factual conclusion strips Paige's evidentiary hearing testimony of all context. Paige explained she did not tell her counsel she wanted to testify because, during the State's case-in-chief, she "already thought [she] was going to testify." Paige also explained that she arrived at this understanding after a "discussion about testifying," when counsel "told [her] he was going to put [her] on the stand." This testimony together establishes that Paige and her counsel arrived at the mutual decision for her to testify after a "discussion." Logically, they would have reached that conclusion only had Paige indicated a desire to testify.

¶ 55        Another disturbing omission involves Paige's counsel's most egregious error—telling Paige how to respond to the trial court's admonishments. After the State's case-in-chief, when it came time for Paige's testimony, her counsel "changed his mind" without explanation, saying only that "it wasn't a good idea." Counsel then told her: "when the judge ask[s] me if I'm going to testify to say no because [counsel] had already told me not to testify." Paige responded to the trial

court's questions by repeating her counsel's instruction—she told the judge, "no, I'm not testifying" because counsel had told her to do so.

¶ 56    The sole version of events in which Paige *never* told trial counsel she wanted to testify came from her counsel. At oral argument, the State repeatedly insisted that the trial court made no credibility findings between trial counsel and Paige, but I fail to see how that helps the State. At best, the trial court's decision not to make credibility findings forecloses the State (and the majority) from concluding that Paige never told her counsel she wanted to testify. If the majority wants to credit trial counsel's testimony, it should vacate the trial court's order and remand for credibility findings. This course would be especially appropriate because the State waived challenge to most of the trial court's analysis under *Strickland v. Washington*, 466 U.S. 668 (1984). Instead, the State relies exclusively on the contemporaneous assertion rule—an aspect of the evidentiary hearing testimony about which the trial court never made credibility findings.

¶ 57                      Deferential Manifest Weight of the Evidence Standard

¶ 58    Because the majority presses on to the merits, I will too. Critical to my analysis is our deferential review of third-stage postconviction proceedings (*e.g., People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 38 (appellate court will not reverse after third stage hearing unless judgment against manifest weight of evidence)), and our ability to affirm on any basis supported by the record (*e.g., People v. Braggs*, 209 Ill. 2d 492, 519 (2003)). Ample record evidence corroborates that Paige asserted her desire to testify to trial counsel and told the court otherwise only after counsel told her what to say. Thus, on this record, the trial court's statement that the contemporaneous assertion rule "is not rigid and absolute" comports with the deferential manifest weight of the evidence standard.

¶ 59                      *Knapp* Did Not Adopt an Inflexible Rule

¶ 60        I do not dispute the general rule requiring a defendant to make a contemporaneous assertion of the right to testify to preserve it. *Knapp*, 2020 IL 124992, ¶ 46. But *Knapp expressly* limited its reasoning to its facts in two crucial respects:

¶ 61        First, the Supreme Court repeatedly emphasized that "the record in this case" or "on this record" there was insufficient evidence that "petitioner was hesitant or unsure of his decision not to testify or otherwise wished to exercise his right to testify." *Id.* ¶ 58.

¶ 62        Second, when discussing *Hartsfield v. Dorethy*, 949 F.3d 307, 315 n.15 (7th Cir. 2020), the Court declined to adopt an exception to the contemporaneous requirement, finding the Seventh Circuit's "concerns inapplicable here." *Knapp*, 2020 IL 124992, ¶¶ 55-56. In other words, contrary to the State's insistence, *Knapp* expressly held in abeyance an exception to the contemporaneous assertion requirement where counsel materially interferes with the efficacy of the trial court's admonishments. Paige's evidentiary hearing testimony places her case within this exception.

¶ 63        In *Knapp*, the defendant agreed he and counsel "had several conversations *** about his right to testify." *Id.* ¶ 33. The defendant worried that counsel gave him incorrect or incomplete advice about the relationship between his proposed testimony and the remainder of the State's evidence. See *id.* ¶¶ 33-34. In contrast, Paige claims that her counsel gave her *no* advice about her testifying. At the evidentiary hearing, Paige explained that when she and her counsel agreed she would testify, he never prepared her or told her what to expect. Then, when he told Paige that he would not call her, his entire explanation amounted to saying it "wasn't a good idea." Even counsel's evidentiary hearing testimony confirms that he gave Paige no advice whatsoever.

¶ 64        Two cases cited in *Knapp* are similarly distinguishable. See *People v. Enis*, 194 Ill. 2d 361, 399 (2000) (defendant's postconviction petition alleged he wanted to testify, but counsel's affidavit explained that though he did not remember advising defendant, "it [was his] practice to discuss the issue in detail with his clients, at which time he would make a recommendation");

*People v. Smith*, 176 Ill. 2d 217, 235-36 (1997) (case on direct appeal where defendant did not even allege counsel's ineffectiveness for failing to advise about right to testify or explain what his testimony would have been).

¶ 65    The best cases for the State are *People v. Thompkins*, 161 Ill. 2d 148 (1994), and *People v. Brown*, 54 Ill. 2d 21 (1973). In both, the defendants were under the impression that counsel would put them on the stand, and the defendants remained silent when counsel instead rested their cases without calling them. *Thompkins*, 161 Ill. 2d at 176; *Brown*, 54 Ill. 2d at 23-24. Contrast those facts with Paige's evidentiary hearing testimony. Paige alleged she acquiesced to trial counsel after his whispered instructions during the trial court's admonishments.

¶ 66    I acknowledge, of course, that the State (and the majority) would prefer to disregard Paige's testimony. But even eliminating the factual differences between this case and *Thompkins* and *Brown*, the State's litigation decisions create a gaping legal difference. Neither in its opening brief nor reply does the State dispute that Paige's counsel provided her with deficient representation. By failing to challenge that finding, the State concedes that trial counsel, at best, provided Paige insufficient advice about her right to testify or about the pros and cons of her decision. At worst, trial counsel actively frustrated Paige's desire to testify by telling her what to say during the trial court's admonishments.

¶ 67    The State also concedes by silence that Paige's counsel had no strategic reason for inadequately advising her and later insisting she not testify. This court has no reason to second-guess the trial court's conclusion that Paige has made a substantial showing of deficient performance, the first prong of her claim under *Strickland*. The State's briefs also do not meaningfully challenge the trial court's conclusion that trial counsel's performance prejudiced Paige—that had counsel performed effectively by preparing Paige to testify and presenting her testimony, there is a reasonable probability the outcome would have been favorable to Paige.

¶ 68    *Brown*, and later *Thompkins* relying on *Brown* largely concerned gamesmanship that could be played in postconviction claims of ineffective assistance: "By hypothesis, in every case in which the issue is raised, the lawyer's advice will in retrospect appear to the defendant to have been bad advice, and he will stand to gain if he can succeed in establishing that he did not testify because his lawyer refused to permit him to do so." *Thompkins*, 161 Ill. 2d at 178 (quoting *Brown*, 54 Ill. 2d at 24). But, because the State conceded most of its case away, we know that Paige never sought to game the system—the State has admitted by concession the unfair nature of the trial.

¶ 69    In the plea waiver context, *Strickland*'s prejudice prong gives comfort to those who, like the court in *Brown*, remain concerned about gamesmanship. For example, in a plea waiver, the defendant must show *Strickland* prejudice by demonstrating that "but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *People v. Hatter*, 2021 IL 125981, ¶26. To make this showing, a defendant must sufficiently plead and prove they would have been "better of going to trial because [they] would have been acquitted or had a viable defense." *Id.* (internal quotations omitted). In waiving the right to testify, the same protections against ineffectiveness claims exist. A defendant who alleges trial counsel ineffectively prevented them from testifying must still show a reasonable probability of a different outcome had had they testified.  As discussed, the State has waived its challenge to the trial court's findings on this score.

¶ 70    At a minimum, the trial court did not manifestly err in its evaluation of the law related to the uniquely troubling facts of this case.

¶ 71                         Issuing as Rule 23(b) Order

¶ 72    I also dissent from the majority issuing this decision under Illinois Supreme Court Rule 23(b). The majority's unyielding interpretation of *Knapp* certainly "modifies [and] explains *** an existing rule of law," see Ill. S. Ct. Rule 23(a)(1), and in a manner that would likely stun the

*Knapp* majority. I have said it already, but it bears repeating: the State *concedes* (by failing to challenge) that Paige's counsel provided her deficient representation by interfering with her right to testify, and the State *concedes* (by failing to challenge) that counsel's deficiency prejudiced the outcome of her trial. I have not found, and the majority does not point to, any other context in which Illinois courts have excused counsel's ineffectiveness for interfering with a defendant's fundamental rights even where the trial court provides admonishments.

¶ 73    And we have direct evidence that the majority has charted a new path. The trial court read *Knapp* to be amenable to exceptions, explaining "the rule requiring a contemporaneous assertion at trial is not rigid and absolute." Yet, the majority now says it is.

¶ 74    For the reasons I put forth, this case fits the exception *Knapp* left open. Indeed, to treat *Knapp* as a one-size-fits-all bar under the facts adduced at the third-stage hearing breathes novel.